Attachment

James William Thomas, III  
Western Tidewater Regional Jail  
2402 Godwin Boulevard  
Suffolk, Virginia 23434

RECEIVED  
JUN 11 2020  
U.S. PROBATION OFFICE  
NEWPORT NEWS, VA

June 7, 2020

To: Ms. Tara R. Gill,  
   U.S. Probation Officer  
   827 Diligence Drive, Suite 210  
   Newport News, Virginia 23606

Re.: U.S. v. Thomas, Case No. 2:18-CR-58  
     Written Statement of Objections

Dear Ms. Gill:

    The defendant's objections to the Presentence Investigation Report are as follows:

I.    <u>Factors Material to Guideline Computations</u>

1. Objection is made to the P.S.R. at paragraph ("pgh") 173. It attributes three points towards the criminal history category due to the state burglary & larceny sentence while at the same time the report describes those crimes under "The Offense Conduct" section; see pgh 6 through 12. U.S.S.G. §4A1.2 Application Note No. 1 states: "... A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence <u>if it was for conduct other than conduct that was part of the instant offense</u>. ..." (emphasis added).

    According to the Government's theory, the state burglary & larceny offenses are intrinsically intertwined with the three possession of child pornography counts. The Government has argued throughout these proceedings that the

1 of 8

three storage mediums are probably stolen fruits of that conduct, i.e., when taken as a whole, there is sufficient evidence for the Court to conclude that, much like virtually every other item of value in his residence, the defendant stole the electronic devices...." (ECF 19 at 17); "[t]he government continues to take the position that the true ownership of these devices cannot be established and that they were likely stolen by the defendant." (ECF 97 at 5, note no. 2), and see also ECF 37 at 1 and ECF 51 at 161 lines 2-8. Indeed, even the P.S.R. at pgh 10 states the detectives' beliefs on two of the three being stolen.

All three possession counts required the government to prove beyond a reasonable doubt four separate elements. The Jury Instruction No. 34, in this case, which describes these elements is titled "The Essential Elements of the Offense Charged" (emphasis added). The second element required "that the visual depiction [be] produced using materials that had been shipped or transported in or affecting interstate or foreign commerce."*1 U.S.S.G. §1B1.3(a)(1) requires sentencing based not only on the conduct comprising the offense of conviction, but on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused... in preparation for that offense[.]"

Accordingly, the defendant should only have three points total - not six. Instead of a criminal history category III, it would be category II.

2.(A) Objections are made to the P.S.R. at pgh. 160. It fails to group counts 1-4 together as § 3D1.2 appears to direct when involving the same (alleged) victim and substantially the same harm. It also fails to group counts 6-8 together which involve the same (alleged) victim and substantially the same harm. This would reduce seven units down to two units plus any other(s) that may be applicable.

(B) Within this same paragraph, the possession counts 9-11 are grouped together and assigned one unit. No unit should be assigned. The rationale is that it constitutes double counting. The P.S.R. gave this group an offense

---

*1. Likewise, all seven production counts required the same.

level of 36 and in doing so assigned five (5) levels for the same alleged engagement in a pattern of exploiting minors as used under §4B1.5(b). Since the group comprising the possession counts would have an offense level of 31 — with 31 being 9 levels lower than the group with the highest offense level of 40 — it would normally be a group disregarded in computing a guideline range. Effectively, under the circumstances of this case, this defendant would receive a six (6) level increase instead of five (5), adding an extra level for the exact same issue already accounted for under §4B1.5(b).

(C)   Within this same paragraph, alleged "Victim #1 (S.C.)" is assigned as "Count 1A" and attributed one unit. At trial it was conceded by the lead case agent (S.A. David J. Desy) that he may have mixed up the evidence for this female with another female. Therefore, the defense challenges the reliability of this evidence. Whether or not this female is a victim is ~~statut~~ challenged. Pgh 80 & 81 four (4) points total for offense characteristics is challenged. Pgh 84 Whether female falls under scope of (fabricated) claim of obstructing justice is challenged. Notably, even if all mixed up evidence pertained to this female, the government could not show that any photograph or video in particular was produced on account of defendant, by a preponderance of the evidence. The chat conversation clearly reveals alleged victim #1 (S.C.) giving "Cody Austin" her e-mail and password to go view **already produced nude photographs**. Moreover, when interviewed by law enforcement she stated she had only taken nude photographs for one local guy (to her) and he distributed them on the internet.

(D)   Within this same paragraph, alleged "Victim #2 (M.B.)" is assigned as "Count 1B" and attributed one unit. No one has ever spoken to this female; she has refused all requests to be interviewed and it appears no investigator has laid eyes on her. Thus, this alleged evidence is unreliable and constitutes speculation on identity, when depictions were created, her age at time, and who ~~took~~ she created each one for. Since she has not identified the two (2) explicit photographs as being her, and those two photographs not being self-evident, the explicit photographs conceivably could

have an internet origin. One of the alleged victims claimed to have done exactly that in regards to one photograph (assumingly because she was uncomfortable with taking the particular photograph — pgh 37 of the P.S.R. explains this: "... they found a photo of two girls on a porn site and sent this image to the defendant."). Likewise, alleged Victim #2 (M.B.) expressed throughout 69 pages of a chat conversation to being uncomfortable with taking photographs other than of her breasts and buttocks. At trial S.A. Desy testified photographs of minor's breasts are not child pornography and assumingly buttocks would not be either. Accordingly, there is no reliable evidence that any child pornography exists for alleged Victim #2 (M.B.)

(E) Within this same paragraph, alleged "Victim #3 (M.N.)" is assigned as "Count 1C" and attributed one unit. Defendant has not seen any evidence linking him or "Cody Austin" to any explicit photos. This evidence is challenged unless the Government can produce evidence showing any specific explicit image can be deemed manufactured due to or on account of defendant or "Cody Austin." Alleged Victim #3 (M.N), upon interview by law enforcement, did not have any memory of interaction with defendant or "Cody Austin." She merely "assumed" she sent the photographs in question and admitted she had sent nude photographs to "numerous individuals" (P.S.R. at pgh 22). These photographs were clearly taken by herself and who she took them for is not known.

(F) Within this same paragraph, alleged "Victim #4 (M.J.)" is assigned as "Count 1D" and attributed one unit. The same as is the case with Victim #2 (M.B.) supra, no one has ever spoken to this female; she has refused all requests to be interviewed and it appears no investigator has laid eyes on her. Investigators did manage, however, to humiliate this female by showing five of the photographs to both her mother and grandmother in 2017 while she was 21 y.o.a. This female did not consent to that deplorable exhibition of depictions by law enforcement. (see P.S.R.-pgh ?) The defendant challenges that identification method and the accuracy of it.

(G) Within this same paragraph, alleged "Victim #11 (E.S)" is

assigned as "Count 1E" and attributed one unit. The same as the case is with alleged victims #2 (M.B.) & #4 (M.J.), no one has ever spoken to this female. In fact, F.B.I. Norfolk has never sent out a lead to seek interview from her. The Government has never disclosed any evidence to the defense pertaining to this female, and therefore there is no reason to conclude she was a minor when depictions were created.

3. Objection is made to the P.S.R. at paragraph 63. It appears there was an increase of four levels due to two photographs allegedly depicting bondage. Whether the photographs depict both bondage and a minor is dispute as defendant has never seen them and no evidence of them was adduced at trial. The Government's forensic examination report does have a "click here" link to them, however, defendant has only had about five minutes of access to that full working report (links are not active in defendant's PDF copy). Without these four points, instead of one unit being attributed to this group, it would be 1/2 a unit. Note: if objection #1 of this written statement of Objections prevails, this objection will be moot.

II.      <u>Facts Not Material to Guideline Computations</u>

1. Objection is made to the P.S.R. at paragraphs 16 & 50. Both pghs erroneously allege seven victims were interviewed. Only the following 5 alleged victims were interviewed: #1 (S.C.), #3 (M.N.), #5 (M.C.), #6 (R.G.), and #7 (S.W.).

2. Objection is made to the P.S.R. at paragraphs 45 & 47. Alleged victim #14 (J.T.) was not a minor in 2010. Defendant knows her personally and had ~~for~~ a consentual relationship with her. At trial defendant directly questioned S.A. Desy about her age in response to his assertion that the investigation took about four years due to the number of female named

folders. He was questioned to the effect of: "So you — the F.B.I. — spent all those years working to identify the females corresponding to the photo folders bearing their full names, yet still got it wrong?" He conceded he may have misidentified her which shows he is not even himself confident about his work in identifying the non-interviewed females. Moreover, Defendant did not even ask her for those photographs. Defendant and her had plans to hook-up a few days later and she sent them (the two explicit ones) on her own accord. Defendant checked his phone after a fire call and was surprised by them. It is the defense's belief that the Government assumes she must have been underage due to her striking beauty. The quoted chat conversation does show Defendant telling her "[y]ou're a 10." And of course the 2014 facebook conversation — when she was age 22 — has no business being in the P.S.R.. Apparently it's in the P.S.R. to provide a basis to accuse the defendant of relevant conduct up until his arrest which was seven weeks after that conversation's date.

3. ✓ Objection is made to the P.S.R. at paragraphs 21, 23, 42, 45, & 52. These pghs all make claim to soliciting child pornography past the year of 2010. This is directly contradicted by the lead case agent's own sworn testimony at trial. Defendant specifically questioned him whether there was any evidence of defendant interacting with any minor past the year 2010 and the answer was "no." Defendant even proceeded to ask if it was normal for a person to commit crimes of this nature and then all of a sudden stop. It was testified I remained free until April of 2014. S.A. Desy testified to the effect of: "Yeah that's one of the things about this case that didn't make sense." (That is very close to what he testified, if not exactly). I cannot imagine how the Government can now overcome that conclusive trial testimony and claim "[t]his [conduct] continued until the defendant's arrest in April 2014" as pgh 52 claims.

4. Objection is made to the P.S.R. at paragraph 14. It states "6 different known series of child pornography" were on the hard drives but lists 45 different sets. The NCMEC database report for this case lists six series which are as follows: Gavin, Helen, Marla & Ellen, Hawaiian Purple, Laura-UK, and Morgan. These total 68 images. None of these series are listed in pgh 14. A great deal of the series names in pgh 14 imply male child pornography. Defendant reviewed the three hard drives and the only male image is the one the Government used at trial. If there are any others, I never saw them in my review and there certainly cannot be as many as this list of series in pgh 14 claims.

5. Objection is made to the P.S.R. at paragraphs: 25 & 26 reference to alleged victim #5 (M.C.); 39 reference to alleged victim #8 (B.G.); 40 reference to alleged victim #9 (B.V.); 41 reference to alleged victim #10 (D.H.); 43 reference to alleged victim #12 (~~L.B.~~); 44 reference to alleged victim #13 (T.N.); and 46 reference to alleged victim #15 (A.S.). The Government cannot prove production for any of these by a preponderance of the evidence. They are all disputed.

6. Objection is made to the P.S.R. at paragraph 15. It implies all female named folders could correspond to unidentified victims. Most of the female named folders contain no nudity. Moreover, the vast majority correspond to adult females at time of photograph.

7. Objection is made to the P.S.R. at paragraphs 13 & 52. They need to be updated to account for the subtraction of all these females they cannot prove production of C.P. for, or possession.

8. Objection is made to the P.S.R. at paragraphs 16 & 52. They allege "Fifteen female victims were identified" and "at least eight

additional victims exist. This is inaccurate as the prior objections have explained.

9. Objection is made to the P.S.R. at paragraphs 6 through 11. Although also inaccurate, it would be best to use the Court's factual findings on all of that located at Dkt. No. 57 at pgs 3 to 11 and adopted by Judge Allen at DKT No. 93 at 1.

Sincerely,

James William Thomas, III