UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES WILLIAM THOMAS, III,

                    Petitioner,

v.                                          Civil No. 2:25cv44
                                            Criminal No. 2:18cr58

UNITED STATES OF AMERICA,

                    Respondent.


<u>OPINION AND ORDER</u>

This matter is before the Court on James William Thomas's ("Petitioner") <u>pro</u> <u>se</u> motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 305. The Government filed a brief in opposition to Petitioner's motion, ECF No. 310, and Petitioner filed a reply brief, ECF No. 313. For the reasons explained below, Petitioner's § 2255 motion is **DENIED**.

## I. BACKGROUND

In April 2018, a federal grand jury returned an indictment charging Petitioner with eight counts of production of child sexual abuse material ("CSAM"), in violation of 18 U.S.C. § 2251(a), and three counts of possession of CSAM, in violation of 18 U.S.C. § 225A(a)(5)(B). ECF No. 1. In August of 2018, Petitioner filed a motion to suppress through his attorney, Rodolfo Cejas. ECF No. 16. Thereafter, the Court granted Mr. Cejas permission to withdraw as Petitioner's counsel and appointed Gregory Klein to represent Petitioner. ECF Nos. 21, 23-24. Mr. Klein filed a supplemental

memorandum in support of the suppression motion, ECF No. 33, but shortly thereafter, he filed a motion indicating that Petitioner had asked him to withdraw as counsel, ECF Nos. 38-39.  Mr. Klein's motion to withdraw was denied, ECF No. 46, and the Magistrate Judge assigned to this case held an evidentiary hearing on the suppression motion, ECF No. 51.   On December 10, 2018, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the motion to suppress be granted in part and denied in part.  ECF No. 57.  Specifically, the R&R recommended that the motion to suppress be denied as to electronic storage devices seized from Petitioner's home but granted as to seized paper notebooks.  Id. at 39.

In February of 2019, Mr. Klein filed a second motion to withdraw, which was granted, and Petitioner was allowed to proceed pro se.  ECF Nos. 70, 72.  Another judge of this Court thereafter adopted the R&R in full, ECF No. 93, and Petitioner then filed three more motions to suppress.  ECF Nos. 102-04.  Each of these pro se motions was denied.  ECF No. 127.

In February of 2020, after a four-day jury trial, Petitioner was found guilty on ten counts for which he was later sentenced to 480 months' imprisonment.[1]  ECF Nos. 240, 281.  Petitioner timely filed a direct appeal, ECF No. 286, and James Theuer was appointed

---

[1] Count Five was dismissed at trial on the Government's motion.  ECF No. 237.

2

to represent Petitioner on appeal, ECF No. 291.  In July of 2023, the Fourth Circuit affirmed Petitioner's conviction and sentence. ECF No. 294.

In January of 2025, Petitioner timely filed the instant § 2255 motion advancing three grounds for relief.  ECF No. 305.  This Court thereafter granted the Government's motion to compel Petitioner's former counsel to file affidavits.  ECF Nos. 308, 309.  The Government timely submitted its opposition brief with affidavits from Mr. Klein and Mr. Theuer attached as exhibits. ECF No. 310.  In August 2025, after receiving a briefing extension, Petitioner filed his reply brief.  ECF No 313.  Petitioner's § 2255 motion is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To obtain such relief, a petitioner must prove by a preponderance of the evidence that (1) his sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; (2) the district court "was without jurisdiction to impose such sentence"; (3) the sentence exceeds "the maximum authorized by law"; or (4) the sentence or conviction is "otherwise subject to collateral attack."  Id.; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  A § 2255 motion is "expected to state facts that point

3

to a real possibility" that one of these errors occurred; "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013); see also Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970) (permitting disposition without a hearing where the record "conclusively show[s] that the prisoner is entitled to no relief").

The right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentence, so the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised "during [the] initial criminal proceeding or on direct appeal." See United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023). The procedural default rules do not, however, bar a constitutional claim that defense counsel provided ineffective assistance in contravention of the Sixth Amendment's guarantee that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Instead, an ineffective assistance claim "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

"To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation 'fell below

an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense.'" United States v. Cooper, 617 F.3d 307, 312 (4th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). A petitioner must prove an ineffective assistance claim by a preponderance of the evidence, Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958), and a failure to prove either Strickland prong is dispositive, Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

To satisfy the first Strickland prong a Petitioner must demonstrate that their lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that "the identified acts or omissions were outside the wide range of professionally competent assistance." Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To establish the second <u>Strickland</u> prong a petitioner must "affirmatively prove prejudice" through demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

### III. DISCUSSION

### A. Claim One – Trial Counsel was Ineffective

### 1. Relevant Facts

While executing a search warrant at Petitioner's home as part of a burglary investigation, officers discovered a large cache of stolen items from numerous thefts occurring across multiple counties. <u>See</u> ECF No. 310, at 3 (reflecting the Government's representation that recovered items were linked to over twenty burglaries and larcenies). While certain recovered items were easily matched to known victims, the officers struggled to identify the rightful owners of many other items suspected to be stolen.[2] To determine ownership of recovered computers and electronic storage devices, the officers successfully employed several methods, including checking the exterior of the devices for

---

[2] The residence, which the officers found in a state of severe disarray, had so many items inside and outside that they searched and inventoried items for three days pursuant to a first search warrant before obtaining a second search warrant authorizing them to resume the search. ECF No. 51, at 78-81, 98.

identifying marks, contacting manufacturers, and looking up serial numbers. Suppression Tr. 105-08, ECF No. 51.[3] Only when these methods failed did the officers connect some of the external hard drives and similar storage devices to their own computers to access the content in the hope of discovering photographs or other information identifying the true owners. Id. at 109-10. Using this identification procedure, the officers found information that revealed owners of at least two storage devices. Id. at 110. On two other storage devices, however, the officers found what appeared to be CSAM, leading them to contact the FBI and halt their review of the drives' content (hereinafter, "the suspect drives"). Id. at 111-13, 115-17.

At the FBI's request, the local officers obtained a third search warrant for the seizure of Petitioner's cell phone. Id. at 118-19. A fourth warrant was then obtained for the seizure of Petitioner's DNA, and the cell phone and two suspect drives were turned over to the FBI. Id. The local officers also turned over the desktop computer that Petitioner appeared to have been actively using in his home as a personal computer. Id. at 119. Although the officers seized this computer because they believed it to be

---

[3] The lead detective testified at trial that between five and ten desktop computers were seized from the residence. Trial Tr. 467, ECF Nos. 271-75. He further testified that after the search, he had a box in his office containing flash drives, SD cards, an external hard drive, and other electronic items that "weren't believed to be needed for forensic value at the time" but were believed to be stolen. Id. at 472-73.

7

stolen, they did <u>not</u> perform a warrantless review of its contents for identification purposes due to the indicia of active use. <u>Id</u>. at 120, 131-32. The FBI later searched, pursuant to a warrant, the desktop computer and two suspect drives and discovered that they contained CSAM.

Prior to trial, Petitioner moved to suppress this evidence. Following an evidentiary hearing, a Magistrate Judge of this Court issued an R&R recommending denial of Petitioner's motion to suppress CSAM on multiple grounds: (1) the warrant was not overbroad; (2) the seizure of the desktop computer and suspect drives was within the scope of the warrant; (3) the warrantless "search" of the two suspect drives was reasonable in order to identify their rightful owners; and (4) Petitioner lacked standing to assert a privacy interest in the suspect drives.

### 2. Claim and Analysis

Petitioner's first § 2255 claim alleges that his trial counsel was ineffective for failing to prove Petitioner's standing to challenge the warrantless search of the suspect drives. ECF No. 305, at 4. According to Petitioner, his lawyer should have placed greater emphasis on the fact that Petitioner lived alone and then cited case law establishing a presumption that a person owns all of the items in their home. <u>Id.</u> Separately, Petitioner contends that his lawyer should have advised him to testify at the suppression hearing to claim ownership of the suspect drives. <u>Id.</u>

Contrary to Petitioner's claims, defense counsel <u>did</u> seek to demonstrate standing by relying on the "presumed" ownership of items found within one's home. Suppression Tr. 151-52. Though trial counsel did not cite it, precedent supports this theory <u>in appropriate circumstances</u>. <u>See</u> <u>Gunnoe v. United States</u>, 34 F.2d 12, 15 (4th Cir. 1929) ("Proof of finding in defendant's residence an article of personal property creates a presumption — varying in its strength according to all the surrounding facts and circumstances — that the owner of the residence is also the owner and in possession of the personal property therein.").

As for the possibility of Petitioner testifying at the suppression hearing, trial counsel hesitated to put Petitioner on the stand because of what he viewed as a strategic "dilemma": Petitioner's testimony admitting ownership of the suspect drives could harm him at trial.[4] However, this concern was at least partially undercut by the fact that, in general, "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the <u>issue of guilt</u> unless he makes no objection." <u>United States v. Thomas</u>, No. 21-4366, 2023 WL 4363652,

---

[4] To explain why Petitioner had not "affirmatively claimed ownership" of the suspect drives, trial counsel stated as follows: "The problem is that, frankly, if he affirmatively says, [t]hese are my electronic devices, that's, you know, potentially, depending on how the Court rules, you know, going to incriminate himself to do that. And so in order to effectuate one constitutional right you've got to violate another, and I think that it's a dilemma for a defendant to do that." Suppression Tr. 154.

at *6 n.4 (4th Cir. July 6, 2023) (emphasis added) (quoting <u>Simmons</u> <u>v. United States</u>, 390 U.S. 377, 394 (1968)); <u>see also</u> ECF No. 57, at 31-32. Even if this Court assumes that trial counsel performed deficiently by misconstruing the risk of Petitioner testifying at the suppression hearing, for the reasons stated below, Petitioner's ineffective assistance claim fails because Petitioner has not demonstrated <u>Strickland</u> prejudice. <u>See Strickland</u>, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

First, it appears unlikely that Petitioner could have proved to the presiding judge that he was the <u>lawful</u> owner of the suspect devices even if he offered self-serving sworn testimony to that effect. Notably, even at this late stage of the case, Petitioner does not offer any evidence of ownership beyond his own sworn statements.[5] Furthermore, while Petitioner makes reference to his mother's purported willingness to submit an affidavit or testify regarding the lawful origin of one device, ECF No. 313, at 10, it

---

[5] Petitioner's trial counsel states in his § 2255 affidavit that he asked Petitioner whether he had any documentation to prove ownership of the drives and Petitioner was unable to provide assistance. ECF No. 310-1. Counsel further indicated that, in his view, Petitioner would not have been a credible witness. <u>Id.</u> At some point after the R&R was issued, Petitioner did file an affidavit purporting to explain how he obtained the devices, ECF No. 74, however, even this tardy affidavit was not supported by any documentation or third-party declaration.

does not appear that any such affidavit was ever submitted. Petitioner's ability to provide credible testimony is further called into question by the presiding judge's recognition that Petitioner made false statements, <u>under oath</u> but not subject to cross-examination, claiming ownership of certain items in his home whereas law enforcement determined that those same items belonged to other individuals. ECF No. 93, at 11 n.3. This Court therefore questions whether Petitioner would have been deemed credible if he testified at the suppression hearing.

Second, and far more importantly, even if Petitioner had demonstrated standing, there would still be no <u>Strickland</u> prejudice because Petitioner's motion to suppress was <u>alternatively</u> denied on the merits. The Magistrate Judge's ruling concluded that accessing the suspect drives to determine ownership without a warrant was reasonable and lawful in light of the sheer amount of stolen property found at Petitioner's residence. ECF No. 57, at 27-29. This finding was made after conducting an evidentiary hearing and crediting the lead detective's sworn testimony that (1) he had an objective basis to reasonably believe that the drives were stolen; (2) the purpose of the limited review of the contents of the suspect drives and multiple other electronic devices was to locate the rightful owner; and (3) out of respect for Petitioner's <u>potential</u> privacy rights, the contents of the desktop computer that he appeared to be actively using were <u>not</u>

11

reviewed even though the officers believed the computer to be stolen. ECF No. 51, at 131-32.

When the District Judge reconsidered this same issue de novo she likewise concluded that suppression was not warranted because the detective reasonably believed that the devices were stolen.[6] ECF No. 93, at 10-11. As both judges recognized, the law does not require an officer to obtain a warrant to examine the contents of a stolen container (digital or physical), particularly if the goal of accessing it is to serve the community through identifying the rightful owner. See Anglin v. Dir., Patuxent Inst., 439 F.2d 1342, 1348 (4th Cir. 1971) ("[P]olice . . . have a duty to protect property and to make a reasonable effort to return property apparently stolen to its true owners."); United States v. Peery, No. CR 16-3477, 2017 WL 3225472, at *3 (D.N.M. May 31, 2017)

---

[6] The quantity and variety of stolen items inside Petitioner's home was vast (from laptop computers to paper towels to Pop Tarts). Even the refrigerator being used in Petitioner's kitchen was "positively identified" as stolen. Suppression Tr. 81-83. The fact that Petitioner was actively using stolen appliances and various other stolen items bolsters the reasonableness of the officers' conclusion that "use" in this case-specific context did not suggest lawful ownership. Notably, in addition to the large number of stolen items recovered from inside the home, a white truck parked outside, and likely the gas cans in the truck's bed, were also stolen, as were other items found outside, including a garbage can. Id. at 83-85, 93. Multiple firearms, trail cameras, office supplies, guitars, a telescope, equipment from a fire department, coins from a coin shop, and computers and storage drives were also determined to be stolen. Id. at 84-89, 144-45. In a search spanning four days, the officers reached the point where it seemed like "anything that was new and in good shape" had been "identified as belonging to someone else." Id. at 88; see id. at 134 (discussing the "magnitude of the items" in the home and the fact that while many items could not be linked to a known victim, the officers had successfully linked recovered items to burglaries and larcenies in at least seven localities across two states).

12

("[L]aw enforcement's act of attempting to determine the ownership of bags abandoned in a stolen vehicle can sometimes be part of a community caretaking function."); see also Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (explaining that the "ultimate touchstone of the Fourth Amendment is 'reasonableness'").

And when objective facts cause an officer to reasonably believe that a warrant is not required before they enter an area or seize or search an item, suppression is not warranted even if this reasonable belief is later proven to be false. See Illinois v. Rogriguez, 497 U.S. 177, 183-89 (1990) (holding evidence need not be suppressed where an officer reasonably, but mistakenly, believed that he had valid consent to search); United States v. Smith, 22 F. App'x 162, 163 (4th Cir. 2001) ("[I]t was not unreasonable for officers to inspect what appeared to be abandoned property to determine the owner's identity."); McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011) ("Even though it turned out that [the resident of the home] had not actually abandoned the house, officers do not violate the Fourth Amendment if they act upon a mistake of fact that is objectively reasonable."); United States v. Harrison, 689 F.3d 301, 309 (3d Cir. 2012) ("[A] reasonable mistake of fact does not violate the Fourth Amendment. In deciding what is reasonable, a court is to apply an objective standard, looking at whether the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief

13

that the search was permissible." (internal quotation marks and citations omitted)); see also United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003) ("A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment."); Smith v. Lusk, 533 F. App'x 280, 286 (4th Cir. 2013) ("[A] mistaken use of deadly force is not necessarily a [Fourth Amendment] violation when such force is based on a mistaken understanding of facts that is reasonable under the circumstances.") (quotation marks omitted); Heien v. North Carolina, 574 U.S. 54, 60-61 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." (quotation marks omitted)).

Here, in what was unquestionably a highly unusual search scene involving an expansive spectrum of stolen goods originating from over 20 burglaries or larcenies,[7] the officers reasonably believed that the recovered valuable electronics in their possession were likewise stolen. Given this reasonable assessment made in response to extraordinary case-specific facts, the officers appropriately

---

[7] Exhibits attached to the Government's brief in opposition to suppression include numerous photos of recovered items as well as two inventories collectively listing 700 seized items. ECF Nos. 19-1 through 19-5. Many if not most of the items that are marked as having been "associated with a victim" are further designated as having been returned to that victim. ECF No. 19-5.

believed that it was lawful to access the devices to perform a limited review of their contents in an effort to identify their true owners. See Thomas, 2023 WL 4363652, at *5 ("'No matter the degree of possession and control,' a 'thief would not have a reasonable expectation of privacy' in a stolen item." (quoting Byrd v. United States, 584 U.S. 395, 396-97 (2018))); United States v. Yager, No. CR01-0028, 2001 WL 34149272, at *2 (N.D. Iowa July 20, 2001) ("[B]ecause the laptop was stolen property, the defendant does not have a reasonable expectation of privacy in it and cannot challenge the legitimacy of the search."); see also Gudema v. Nassau Cnty., 163 F.3d 717, 722 (2d Cir. 1998) ("[A]lthough an owner retains some privacy interest in property that is merely lost or stolen, rather than intentionally abandoned, that interest is outweighed by the interest of law enforcement officials in identifying and returning such property to the owner."); United States v. Cooper, No. 4:21cr190, 2023 WL 2696677, at *3 (E.D. Mo. Jan. 13, 2023), report and recommendation adopted, No. 4:21cr190, 2023 WL 2682009 (E.D. Mo. Mar. 29, 2023) (finding that a police officer appropriately reviewed the contents of a flash drive attached to keys that a citizen found in a park because the "identification of the owner of lost property is a governmental interest that outweighs the individual's interest in freedom from government intrusion"). The well-developed record in this case, to include sworn testimony subject to cross-examination, the

15

absence of any apparent investigative need to bolster evidence of burglary, the fact that members of the public had already been brought to Petitioner's home to establish their rightful ownership of various stolen items, and the fact that the investigating officers never reviewed the contents of the "in use" desktop computer out of respect for Petitioner's privacy rights, all confirm that the true motivation for the "identity review" of the suspect devices was to discover the owner and return the property.

In sum, because there is not a reasonable likelihood that the CSAM would have been suppressed even if the defense had established standing, Petitioner fails to demonstrate Strickland prejudice.[8] His first § 2255 claim is therefore **DENIED**.

---

[8] Claim One is resolved on the prejudice prong, however, this Court is far from convinced that trial counsel committed a constitutional error based on his purported lack of knowledge of the law. Although this Court and the Court of Appeals both cited Simmons v. United States, 390 U.S. 377 (1968) to illustrate that Petitioner's sworn admissions at the suppression hearing could not be used at trial as direct evidence of his guilt, Simmons does not create a complete ban on the use of such admissions at trial. See Durante v. United States, No. CV 16-8949, 2020 WL 205895, at *5 n.5 (D.N.J. Jan. 13, 2020) (explaining that "[a]llowing Petitioner to testify at the suppression hearing carried some risk" because the Supreme Court "left open the question of whether the Government may, consistent with the Fifth Amendment, use a defendant's suppression hearing testimony to impeach him at trial," and that "every Circuit" to consider the issue has allowed the use of such testimony for impeachment). Accordingly, in a case where the incriminating devices were found in a residence with hundreds of stolen items, including many stolen computers and drives, defense counsel likely had a legitimate strategic concerns with his client admitting ownership under oath. Cf. Suppression Tr. 52 (reflecting defense counsel's cross-examination of an FBI agent confirming that "there was no concrete [digital] evidence to show ownership" of the two external drives). Illustratively, an issue arose at Petitioner's trial when the Government tried to use suppressed written notebooks for impeachment, but the trial judge did not allow the Government to do so after learning that Petitioner had never admitted ownership of the notes under oath at the suppression hearing. Trial Tr. 667-69.

16

## B. Claim Two – Appellate Counsel was Ineffective

Petitioner's second § 2255 claim alleges that appellate counsel failed to effectively challenge the lack of a "nexus" in the search warrant affidavit between Petitioner and his residence. ECF No. 305, at 5.  This claim, grounded in the theory that there was no reasonable basis to search for evidence in Petitioner's home following his arrest at a burglary scene, fails on the merits.

First, contrary to Petitioner's contention, <u>id.</u>, this nexus argument was <u>not</u> ignored by the Fourth Circuit.  Nor was the argument "deemed waived" by the Fourth Circuit as Petitioner seems to contend.  <u>Id.</u>  Rather, the Fourth Circuit specifically addressed the argument and explained why it failed.  ECF No. 294, at 7-8. Accordingly, Petitioner falls far short of demonstrating that appellate counsel's performance was <u>constitutionally</u> deficient as the very argument that Petitioner asserts was undeveloped and overlooked was in fact considered and rejected <u>on the merits</u> by the Fourth Circuit.

Additionally, Petitioner fails to establish <u>Strickland</u> prejudice because he fails to demonstrate a reasonable probability of a different outcome on appeal had his counsel presented a more detailed argument on this issue.[9]  Because Petitioner fails to

---

[9] While the Fourth Circuit did not squarely address the "good-faith exception" to the warrant requirement, it did note that it saw "no error in the magistrate judge's alternative finding that even if th[e] warrant had in some way been deficient, the officer's reasonable reliance on the warrant would render inapplicable the exclusionary" rule.  <u>Thomas</u>, 2023 WL 4363652, at *4 n.2.

satisfy either Strickland prong, his second ground for relief is **DENIED**.

### C. Claim Three – Appellate Counsel was Ineffective

Petitioner's third claim asserts that appellate counsel was constitutionally deficient for failing to challenge the sufficiency of the trial evidence regarding the CSAM production counts. ECF No. 305, at 7. Specifically, Petitioner argues the Government failed to "prove the females in the photo[graphs] were under the age of 18." Id.

Either direct or circumstantial evidence can prove an element of a criminal offense. United States v. Bonner, 648 F.3d 209, 213 (4th Cir. 2011) (explaining that "a conviction may rely entirely on circumstantial evidence"). And "[t]he uncorroborated testimony of one witness," if accepted as credible by the jury, can alone be "sufficient to sustain a conviction." United States v. Dennis, 19 F.4th 656, 667 (4th Cir. 2021). At trial, the Government presented testimony from two witnesses who had communicated with Petitioner online when they were under the age of eighteen. Trial Tr. 280-98. The first witness testified that she told Petitioner that she was a minor, that she was "probably" naked during some video-chats with Petitioner, and that she had sex with Petitioner when she was

---

Therefore, even if a more robust argument on appeal could have called the validity of the warrant into question, there is not a reasonably probability of a different outcome as the good-faith exception would still result in denial of the suppression motion.

18

14 or 15 and he took pictures of her during their sexual encounters. Id. at 283-86. The Government copied at least some of these pictures onto a disk marked as a trial exhibit and the witness then testified that she had reviewed the disk and confirmed that it contained pictures of her while engaged in relations with Petitioner. Id. at 286-88. The disk was then admitted into evidence.[10] Id. at 288.

The second witness similarly testified that she met Petitioner online when she was 13 or 14, and while she never met him in person, she took nude pictures of herself at Petitioner's request and sent them to him. Id. at 292-93. The second witness likewise confirmed that she reviewed a disk containing several pictures of herself that she had sent to Petitioner. Id. at 295-96. Again, that disk was admitted into evidence. Id. at 296.

Because the Government presented direct evidence that both victims were under eighteen when the admitted photographs were taken, appellate counsel wisely did not raise a baseless sufficiency-of-the-evidence claim on direct appeal. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail,

---

[10] Even if the contents of the disk were not shown to the jury in open court as Petitioner claims in his § 2255 motion, ECF No. 305, at 7, the exhibits were admitted into evidence and available for review by the jury during deliberations. Additionally, photos of both victims appear to have been published to the jury earlier in trial during the testimony of the Government's forensic examiner. Trial Tr. 245-64.

far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (quoting Smith v. Murray, 477 U.S. 527, 536 (1986))). Accordingly, Petitioner falls far short of demonstrating that appellate counsel was deficient at all, let alone constitutionally deficient. Similarly, because Petitioner fails to demonstrate a reasonable likelihood that a sufficiency of the evidence claim could have prevailed on appeal, Petitioner fails to demonstrate Strickland prejudice. For these reasons, Ground Three is **DENIED**.

## IV. CONCLUSION

For the reasons explained above, all three of Petitioner's § 2255 claims are **DENIED** on the merits. ECF No. 305.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty**

**(60) days** from the date of this Opinion and Order.  Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to Petitioner and to counsel for the Government.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 20 , 2026